UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEMAL ALBRITTON,<br><br>        Plaintiff,<br><br>-against-<br><br>LAWRENCE FREDELLA et al.,<br><br>        Defendants. | 22-cv-4512 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  Plaintiff Jemal Albritton, incarcerated (when he filed this case) and proceeding pro se, brought this action against the New York City Department of Corrections, Lawrence Fredella, Anna Bermudez, Tina Stanford, Tyece Drake, Charles Davis, Tana Agostini, Ellen Alexander, Erik Berliner, Michael Corley, Caryne Demosthenes, and Marianna Soto. Defendants move to dismiss. For the following reasons, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

  In 2004, Albritton was charged with second-degree murder, manslaughter, criminal possession of a weapon, and criminal possession of a forged instrument. Am. Compl. ¶ 13, Dkt. 65. At trial, Albritton was found guilty of the two possession charges. *Id.* He was acquitted of the murder and manslaughter charges after testifying and asserting a justification defense. *Id.* Albritton says the records related to the acquitted charges were sealed. ¶ 14.

  On January 31, 2007, Fredella—the prosecutor on Albritton's case—sent a letter to the parole board indicating that the district attorney's office opposed Albritton's early release. ¶¶ 15–16. Albritton alleges that the letter contains "false facts" about the sealed charges and was meant "to persuade the Division of Parole to deny [him] release to community supervision when the time came." ¶ 16. Fredella's letter is attached to Albritton's complaint. Dkt. 2-2 at 40. In it, Fredella says that Albritton's testimony at trial was "inconsistent" and "illogical," and he accused Albritton of telling "lies" to the jury. *Id.* at 42–43. Fredella "urge[d] the Board to analyze and evaluate Albritton very closely," claiming that Albritton "has demonstrated the ability to be quite manipulative and deceptive." *Id.* at 45. Albritton says that Fredella's letter unfairly mischaracterized the evidence in the case.

  Albritton made his initial parole appearance in September 2020, but was denied parole. Am. Compl. ¶ 18. He says that Drake and Davis relied on the false information provided by Fredella and "carried out the objectives of the conspiracy with Defendant Fredella with the sole objective and goal in mind to make Plaintiff serve a full and complete life sentence." *Id.* Albritton appealed the parole decision. He claims that Agostini, Alexander, and Berliner reviewed his appeal, but affirmed the decision "in furtherance of the conspiracy." ¶ 39.

Albritton also made requests to the New York City Department of Probation and Bermudez to "amend, modify and expunge the erroneous information relating to the acquitted criminal charges … from his pre sentence investigation report." ¶ 64. He says that Corley and Demosthenes were aware of these requests and "made a conscious decision to enter into a conspiracy with Defendant Fredella." ¶ 69. When Albritton appeared for a second parole release hearing on September 13, 2022, Corley and Demosthenes denied him parole. ¶ 70. Albritton says that he "made a written request to Defendant Tina Stanford," that she "amend, modify and expunge the false, fabricated and erroneous information that related to the acquitted charges," and that he "made several oral and written requests to Defendant M. Soto" to have the "fabricated, false and erroneous information taken out of all the parole and institutional files." ¶¶ 76, 77.

Albritton brought this action pro se, alleging that he was denied parole in violation of his rights to due process and equal protection under both federal and state law. *See* Dkt. 2 ¶¶ 41–45. Prior to reassignment of this case to me, Judge Koeltl denied Albritton's request for a preliminary injunction. *See Albritton v. Fredella*, 2022 WL 17718550, at *2 (S.D.N.Y. Dec. 15, 2022). The Court also dismissed his claims against defendant Mary Grace Sullivan and transferred his claims against the John and Jane Doe defendants to the United States District Court for the Northern District of New York. *See Albritton v. Fredella*, 2022 WL 3598297, at *1 (S.D.N.Y. Aug. 22, 2022). Those claims were subsequently dismissed with prejudice. *See Albritton v. Sullivan*, 2023 WL 3612840, at *2 (N.D.N.Y. May 24, 2023).

On August 8, 2023, Albritton requested leave to file an amended complaint, which the Court granted. Dkts. 54, 66. Liberally construed, the amended complaint brings claims for violation of Albritton's constitutional rights under 42 U.S.C. §§ 1983 and 1985. Albritton also brings claims for defamation, libel, slander, and intentional infliction of emotional distress. Albritton's complaint seeks declaratory judgment, injunctive relief, and damages. On January 29, 2024, Albritton informed the Court that he had been released from prison. Dkt. 95. Albritton is currently under parole supervision. *See* Dep't of Corr. and Cmty. Supervision, https://nysdoccslookup.doccs.ny.gov/ (Jemal Albritton, DIN 06A5348).

## LEGAL STANDARDS

Article III of the Constitution provides that the "judicial power shall extend to all Cases" and "Controversies." U.S. Const. art. III, § 2. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (citation omitted).

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable

inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

## DISCUSSION

### I.  Federal claims

#### A. Declaratory and injunctive relief

The Court first dismisses Albritton's requests for declaratory and injunctive relief as moot because Albritton has been released from prison. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Booker v. Graham*, 974 F.3d 101, 107 (2d Cir. 2020) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Here, Albritton's "release on parole renders moot his challenge to the procedures used by the Board in assessing eligibility for parole," including challenges concerning allegedly false information in his parole file. *Caraballea v. Pataki*, 2009 WL 1812824, at *2 (W.D.N.Y. June 25, 2009).

As other courts in this district have recognized, "the mere possibility that he will violate his parole and be returned to [state] custody, and that [state] personnel would then use the allegedly false and erroneous information from his file against him … is pure speculation, and cannot form the basis for the conclusion that plaintiff meets any recognized exception to the mootness doctrine." *Bodie v. Morgenthau*, 2006 WL 357822, at *3 (S.D.N.Y. Feb. 16, 2006); *Phillips v. Ienuso*, 1995 WL 239062, at *2 (S.D.N.Y. Apr. 24, 1995) (Sotomayor, J.) (dismissing request for injunctive relief as moot after plaintiff's release from prison despite plaintiff's claim that "he is currently on parole and could be returned to the custody of the defendants"); *Mitchell v. Annucci*, 2022 WL 445039, at *5 (N.D.N.Y. Feb. 14, 2022) ("[C]ourts have consistently refused to find that the hypothetical possibility that a former inmate on supervised release will violate the terms of his release and be returned to prison sufficient to satisfy [any mootness exception].") *aff'd*, 2023 WL 7648625 (2d Cir. Nov. 15, 2023).

Albritton says that he is suffering an "ongoing harm" because the erroneous information remains in his parole file and "could affect and has affected" his future. Dkt. 114 at 22. He submits an affidavit from his mother, relaying the fact that a potential landlord refused to rent an apartment to Albritton after being told by a parole officer that Albritton "had a murder charge, and that he also had bank fraud and credit card fraud." Dkt. 114 at 28. Even accepting these additional allegations as true, it is not clear how the information the potential landlord received had any connection to Albritton's parole file. For one thing, none of the allegedly erroneous information in the parole file relates to fraud. For another, whether or not this case moves forward, Albritton's murder charge will remain a matter of public record. *See, e.g.*, *People v. Albritton*, 801 N.Y.S.2d 238 (Sup. Ct. 2005); *Albritton v. Commissioner*, 2013 WL 4500736, *1 (E.D.N.Y. Aug. 20, 2013).

While Albritton may be right that this charge (despite the acquittal) could impact "employment opportunities or other aspects of life," Dkt. 114 at 22, this case cannot remedy that harm.

### A. Monetary relief

Albritton sues Defendants in their individual capacity for damages, but monetary relief against them for Albritton's federal claims is also unavailable. First, with respect to Fredella, "[i]t is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993); *see also Vazquez-Diaz v. Borreiro*, 2022 WL 17539501, at *4 (S.D.N.Y. Dec. 5, 2022) (prosecutorial immunity under § 1985). "For an official who has absolute immunity, this immunity extends to all acts 'closely associated with the conduct of litigation.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 455 (S.D.N.Y. 2015) (quoting *Barrett v. United States*, 798 F.2d 565, 571–72 (2d Cir. 1986)). In the case of prosecutors, this includes "actions in connection with a bail application," such as "a prosecutor's communications with other officials directly pertaining to matters of sentencing." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149–50 (2d Cir. 1995).

Here, Albritton alleges that Fredella violated his constitutional rights when Fredella wrote a letter to the parole board stating that "[t]he Office of the District Attorney [was] opposed to [Albritton's] early release" and providing the reasons for this position. Dkt. 54-2. Albritton says that Fredella does not have absolute immunity because Fredella's actions "were not taken in good faith" and "were retaliatory in nature." Dkt. 114 at 12. But Fredella was acting in a capacity closely related to his litigation and sentencing responsibilities in providing a letter to the parole board stating the office's position on Albritton's detention. Even accepting that Fredella was motivated by discriminatory animus, those actions still fall within the scope of absolute immunity. *See Greathouse v. Vasquez*, 2021 WL 6334689, at *5 (S.D.N.Y. Dec. 17, 2021) (holding that prosecutor was "entitled to immunity as related to any alleged conspiracy with the parole board to deny [the plaintiff] parole") *report and recommendation adopted*, 2022 WL 83663 (S.D.N.Y. Jan. 7, 2022); *Johnson v. Kegans*, 870 F.2d 992, 997–98 (5th Cir. 1989) (holding that prosecutor's statements to the parole board were protected by absolute immunity).

Similarly, "[p]arole officers are entitled to absolute immunity when they perform judicial functions." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998). "Thus, a parole board official is absolutely immune from liability for damages when he decides to grant, deny, or revoke parole." *Id.* (internal quotation marks and alterations omitted); *accord Victory v. Pataki*, 814 F.3d 47, 66 (2d Cir. 2016). Absolute immunity also extends to officers who make recommendations about a prisoner's release. *LaBounty v. Coombe*, 1999 WL 177438, at *5 (S.D.N.Y. Mar. 30, 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000); *see also Peay v. Ajello*, 470 F.3d 65, 69 (2d Cir. 2006) ("[P]robation officers are also entitled to absolute immunity in suits for damages arising out of their preparation and submission of presentence reports."). Parole commissioners may also be immune, if the claims against them are based on "a judicial function, like revoking parole." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (affirming dismissal of § 1983 claims against parole commissioner).

Albritton alleges that Drake, Davis, Agostini, Alexander, Berliner, Corley, Demosthenes, Soto, and Stanford (who are all employees of the Board of Parole or the prison) each played some role in denying him parole, either directly by relying on the information submitted by Fredella or indirectly by failing to correct his file. *See* Am. Compl. ¶¶ 5–10, 18–31, 39, 62. Since Albritton's claims all relate to the judicial role of these employees in creating parole summaries, adjudicating Albritton's parole and appeals, or otherwise overseeing the adjudication of his parole, monetary relief is barred by immunity. *Cf. Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (finding defendant Alexander absolutely immune from liability in § 1983 case related to parole board decision establishing special conditions of post-release supervision).

Albritton argues that the parole officials are not immune when they are relying on "knowingly false information in their determinations." Dkt. 114 at 8 (citation omitted). But the Second Circuit has made clear that "absolute immunity applies to a judicial function, like revoking parole, even where such action 'was in error' or 'was done maliciously.'" *Montero*, 171 F.3d at 761. A parole officer making a parole determination is therefore entitled to absolute immunity, regardless of allegations that the parole officer was knowingly relying on false information.

Albritton also seeks damages against Bermudez. But Albritton fails to allege Bermudez's personal involvement in any constitutional violation, which "is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Albritton states in a conclusory fashion that he "requested for" Bermudez to "amend, modify and expunge the erroneous information" and Bermudez "refused to make necessary corrections." Am. Compl. ¶¶ 10, 64. Yet Albritton does not allege any facts substantiating this allegation. For example, Albritton does not say when or how he informed Bermudez of any errors in his file. (He does allege, in contrast, that he made "a written request" to Stanford and "several written and oral requests" to Soto. ¶¶ 76, 77.) Nor does Albritton allege what actions, if any, Bermudez took in response to his requests that constituted her refusal. In his opposition, Albritton states that, as the Commissioner of the Department of Probation, Bermudez is "ultimately responsible" for creating a policy for him to amend his file. Dkt. 114 at 14. But a "defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (cleaned up). He also says that "Bermudez was informed by plaintiff of such information." Dkt. 114 at 14. But without *factual* allegations of Bermudez's involvement, the claim against Bermudez fails. Plus, while Defendants do not raise this argument in their briefing, Bermudez too may be shielded by immunity to the extend that Albritton's claim is based on Bermudez's role in the adjudication of his parole.

More fundamentally, the Court is skeptical that Albritton could make out a constitutional violation here as far as the parole board or prison employees are concerned. Albritton claims that asking him about his murder and manslaughter charges violated "the Double Jeopardy Clause" and "Res judicata" and that he should have been "afforded his right to confrontation." Am. Compl. ¶ 36. But the parole board "is permitted to consider all of the circumstances of the instant offenses, which may include conduct for which petitioner was not convicted, 'so long as some record evidence of such conduct exists in the record and it is not the sole basis for the Board's

determination.'" *Nunez v. Dennison*, 857 N.Y.S.2d 810, 811 (3d Dep't 2008) (citation omitted). So contrary to Albritton's claims throughout his complaint, the parole officers were permitted to ask him questions about acquitted conduct to understand the circumstances of his crime. Similarly, Bermudez and the other officials were not required to remove information from Albritton's file just because the information referenced acquitted conduct or described him in unfavorable terms. *See Lynch v. N.Y.S. Div. of Parole*, 442 N.Y.S.2d 179, 180 (3d Dep't 1981) ("A review of the parole hearing transcript and the board's decision clearly establishes that the board merely reflected on the circumstances surrounding the conviction for grand larceny and this inquiry by the board is not tantamount to a board finding that petitioner was accountable for [acquitted conduct].").

### A.  Claims against the New York City Department of Probation

Finally, Albritton's federal claims against the New York City Department of Probation must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").[1]

Albritton says this standard does not apply, because he is suing the Department of Probation for injunctive relief, not monetary damages. Dkt. 114 at 14. But, as already explained, Albritton's claims for injunctive relief are moot now that he has been released.

## II.     State law claims

The Court declines to exercise supplemental jurisdiction over Albritton's state-law claims because, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted). So those claims will be dismissed without prejudice to Albritton refiling in state court.

### CONCLUSION

The motions to dismiss are GRANTED. Albritton's claims for injunctive and declaratory relief and his state law claims are dismissed without prejudice, and the claims for monetary relief are dismissed with prejudice. Albritton is denied leave to amend. Albritton has already been given

---

[1] Even if the claims had been brought against the City of New York, they would fail. "To hold the City liable for a constitutional tort under § 1983, the 'execution of [the City's] policy or custom' must 'inflict[ ] the injury.'" *Persaud v. City of New York*, 2024 WL 2159852, at *9 (S.D.N.Y. May 14, 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Local governing bodies like the City of New York can be sued directly (1) when the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers or (2) for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* (cleaned up). Albritton does not allege that the city (or any city agency) had an unlawful policy or custom.

one chance to amend and, in any event, amendment would be futile to the extent that Albritton's claims are moot or otherwise barred by immunity.

The Court certifies that any appeal from this decision would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate Dkts. 96 and 100, and to close the case.

SO ORDERED.

Dated: August 22, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge